The Honorable Jerry F. Hunton State Representative 14221 Greasy Valley Road Prairie Grove, Arkansas 72753
Dear Representative Hunton:
This is in response to your request for an opinion on the following question:
 If the Arkansas Department of Pollution Control and Ecology has the statutory authority to Permit a Solid Waste Facility that reduces the amount of municipal solid waste by 90% that is required to be landfilled, would it be a conflict of interest on the part of ADPCE in light of the fact that ADPCE receives a $5 per ton tipping fee per ton of garbage that goes into a landfill? ADPCE receives $3 dollars for their budget and $2 goes to the Waste Districts that the garbage is generated from.
I believe it is important initially to clarify the amount and application of landfill disposal fees. A landfill disposal fee of $1.50 per ton is imposed upon landfill permittees who choose to operate on a weight basis. A.C.A. § 8-6-606(a)(2) (Repl. 1993). Amounts arising from this fee are deposited in the Solid Waste Management and Recycling Fund, and up to 25% of amounts received annually in the fund may be used by the Arkansas Department of Pollution Control and Ecology (the "Department") "for the administration of a solid waste management and recycling program and for solid waste management compliance and enforcement activities at landfills and open dumps." A.C.A. § 8-6-605 (Repl. 1993). Other amounts in the fund are distributed to regional solid waste management boards under a grants program. A.C.A. § 8-6-609(b)(1) (Supp. 1995).
A separate landfill disposal fee of $1.00 per ton is also imposed upon landfill permittees who choose to operate on a weight basis. A.C.A. §8-6-1003(a)(2) (Repl. 1993). Amounts arising from this fee are deposited in the Landfill Post-Closure Trust Fund, and up to four percent (4%) of amounts received annually in the fund may be used by the Department "for the administration of landfill post-closure corrective action. . . ." A.C.A. § 8-6-1002(a) (Supp. 1995). Other amounts in the fund are used by the Department "for landfill post-closure corrective action." A.C.A. §8-6-1002(b)(2).
It is my understanding that some regional solid waste management boards impose per-ton landfill disposal fees, and that at least one board imposes a $2.50 per ton fee. It is also my understanding that the Department receives no part of any landfill disposal fees imposed by any regional solid waste management board. The sum of the fees described above and a local fee of $2.50 per ton is, of course, $5.00 per ton, and I assume this sum is the source of the amount referred to in your request.
Your request states that $3.00 of the $5.00 per ton aggregate fees is applied to the Department's budget. As demonstrated by the foregoing, that statement is not accurate. At most, it might be said that $1.375 of each $5.00 in fees goes to the Department's "budget" (i.e., ultimately is expended by the Department), but that amount includes $0.96 that is deposited in the Landfill Post-Closure Trust Fund and is restricted in purpose. It would be more accurate, therefore, to say that $0.415 of each $5.00 in fees goes to the Department's "budget." Even that statement, however, is somewhat misleading, because all amounts received by the Department from the fees discussed herein are restricted as to their use; none may be used by the Department to subsidize its budget generally.
Because (a) the amounts actually received by the Department from landfill disposal fees are small in comparison to the amounts mentioned in your letter, (b) the uses of such funds are restricted, and (c) it is not clear that a loss of funds to the Department from landfill disposal fees would not be made up from other sources, the Department's financial interest in seeing that large amounts of solid waste continue to be deposited in landfills is not, in my view, nearly as compelling as suggested by your request, and may be negligible. Solely for purposes of rendering this opinion, however, I will assume that the Department might reasonably be expected, other factors being equal, to prefer the deposit of more, rather than fewer, tons of solid waste in landfills, with the result that the Department's funding from landfill disposal fees, with which to improve and expand its environmental protection activities, is not impaired.
A regulatory agency that is charged with protecting the environment[1]
may reasonably be expected, other factors being equal, to favor increased recycling and the deposit of smaller amounts of waste into the landfills of the state. Clearly, the interest in maintaining or increasing fee income that is based on the amount of solid waste deposited in landfills, and the interest in reducing the amount of those deposits, are competing: the agency cannot pursue one except at the expense of the other. In this sense, it might be said that the agency has a "conflict of interest."
In my opinion, however, the relevant inquiry is whether any provision of the law requires, or even allows, the Department, or the Arkansas Pollution Control and Ecology Commission (the "Commission"),[2] to take any action to alleviate the conflict. It might be argued in the abstract that PCE should cease collecting landfill disposal fees, at least during periods when there is being considered a permit application for a facility that will result in a decrease in the amount of solid waste deposited in landfills; that PCE should automatically grant each permit application for such a facility in recognition of its alleged economic preference for the deposit in landfills of greater amounts of solid waste; or that PCE should recuse from the consideration of each such permit application, which would then be heard by some other person or body having no economic interest in the deposit of solid waste in landfills.
All of the foregoing arguments ignore the fact that the General Assembly has enacted laws that require PCE both to collect landfill disposal fees and expend some portions thereof, and to issue or deny permits for solid waste disposal facilities. The landfill disposal fees are imposed by state statute; PCE has no authority to suspend or terminate collection thereof due to the fact that its revenues therefrom may be seen as having an impact upon its permitting decisions. See A.C.A. §§8-6-606, 8-6-1003. Likewise PCE has an affirmative duty, not the discretion, to issue or deny permits "to prevent, control, or abate pollution . . . and for the installation, modification, or operation of disposal systems. . . ." A.C.A. § 8-4-203(a). There is no provision in law for PCE to recuse from a permitting decision based upon a perceived institutional conflict of interest.
The decision to issue or deny a permit should, of course, be made on the basis of an assessment of whether the operation of the facility will advance, or at least not hinder, the purposes of the applicable statutes and regulations. But the purposes of the statutes themselves may be seen here to conflict: they encourage the deposit of smaller amounts of solid waste in landfills, but they also serve to raise funds, based upon the amounts of such deposits, for environmental protection activities. It is the duty and authority of PCE, in making permitting decisions, to weigh the competing statutory goals and to reach a considered decision in good faith. In my opinion, it is entirely reasonable and appropriate for PCE, under current law, to take into account in making its permitting decision the fact that the operation of a proposed solid waste disposal facility will result in both the deposit of smaller amounts of solid waste in landfills, and reduced collections of landfill disposal fees (and a corresponding reduction of amounts available in the Solid Waste Management and Recycling Fund and the Landfill Post-Closure Trust Fund with which to carry on the environmental protection activities for which those funds were established).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
[1] See, e.g., A.C.A. §§ 8-1-202(b)(1)(A) (Repl. 1993), 8-1-203(b)(1) (Supp. 1995).
[2] It falls to the Commission, rather than the Department, to issue or deny permits for solid waste disposal facilities. See A.C.A. §§ 8-6-1601,8-6-203 (Supp. 1995). I assume, however, for purposes of this opinion only and without expressing any opinion on such issue, that the Department and the Commission have such an identity of interests in these matters that they may be considered a single agency, and I refer to the Department and the Commission collectively as "PCE."